Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
**LAW OFFICE OF MARK E. MERIN**
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Alan L. Schlosser (State Bar No. 049957)
**AMERICAN CIVIL LIBERTIES UNION**
  **FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Telephone:     (415) 621-2493
Facsimile:     (415) 255-1478
E-Mail:        aschlosser@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| SACRAMENTO HOMELESS ORGANIZING COMMITTEE, WILLIAM MURPHY, PAMELA POOLE, | Case No. |
| | **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** |
| Plaintiffs, | |
| | **DEMAND FOR JURY TRIAL** |
| vs. | |
| COUNTY OF SACRAMENTO, and SCOTT R. JONES, in his official capacity as the Sheriff of the County of Sacramento, | |
| Defendants. | |

## INTRODUCTION

On May 13, 2014, the County of Sacramento adopted Sacramento County Ordinance No. 1559, codified as Sacramento County Code sections 9.81.010-070, purporting to prohibit "aggressive and intrusive solicitation" throughout the unincorporated territory of the County of Sacramento. Instead, the Ordinance broadly and over-inclusively prohibits the expression of First Amendment rights, in violation of the United States Constitution.

1

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Sacramento Homeless Organizing Committee v. County of Sacramento*; United States District Court, Eastern District of California, Case No. _____

**JURISDICTION & VENUE**

1.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (in that they arise under the Constitution of the United States); and pursuant to 28 U.S.C. § 1343(a)(3) (in that they are brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution).

2.      Venue is proper in the United State District Court for the Eastern District of California under 28 U.S.C. § 1391(b). Defendant is located in the Eastern District of California and many of the acts and/or omissions complained of herein occurred or will occur in this District.

3.      Intradistrict venue is proper in the Sacramento Division of the United State District Court for the Eastern District of California under Local Rule 120(d), because this action arises from acts and/or omissions which occurred or will occur in the County of Sacramento.

**PARTIES**

4.      Plaintiff SACRAMENTO HOMELESS ORGANIZING COMMITTEE ("SHOC") is an unincorporated association of members who are advocates, homeless and formerly homeless, and low-income individuals. SHOC maintains its office in the State of California, County of Sacramento. SHOC brings this action on its own behalf, and on behalf of its members.

5.      Plaintiff WILLIAM MURPHY ("MURPHY") is, and at all relevant times hereto was, a homeless individual residing in the State of California, County of Sacramento.

6.      Plaintiff PAMELA POOLE ("POOLE") is, and at all relevant times hereto was, a homeless individual residing in the State of California, County of Sacramento.

7.      Defendant COUNTY OF SACRAMENTO ("COUNTY") is a "public entity" within the definition of California Government Code section 811.2. Public entities are subject to suit, pursuant to California Government Code 945. The COUNTY, through its Board of Supervisors, is responsible for enacting the Ordinance.

8.      Defendant SCOTT R. JONES is the Sheriff of the COUNTY, and responsible for enforcing the Ordinance. SCOTT R. JONES is sued in his official capacity.

2

# FACTUAL ALLEGATIONS

9.      On May 13, 2014, the COUNTY, through its Board of Supervisors, unanimously adopted Sacramento County Ordinance No. 1559, codified as Sacramento County Code sections 9.81.010-070 (the "Ordinance"). The Ordinance took effect in full force on June 12, 2014. A true and correct copy of the Ordinance, including the County of Sacramento Board of Supervisors' motion to adopt the Ordinance, is attached hereto as "Exhibit A," and the text of the Ordinance is expressly incorporated herein.

10.      The Ordinance prohibits solicitation in "an aggressive or intrusive manner in any public place." Specifically, the Ordinance prohibits  solicitation at the following locations: (1) within 35 feet of any entrance to or exit from any financial institution or automated teller machine ("ATM"), or any ATM where a "reasonable person would or should know that he or she does not have the permission to do so "; (2) from a vehicle occupant within 200 feet of an intersection;; (3) on any median strip; (4) from a vehicle occupant within 35 feet of a driveway providing vehicular access to a shopping center, retail, or business establishment  (5) in any public transportation vehicle or within 50 feet of any public transportation vehicle stop; (6) at any motor vehicle occupant stopped at a gasoline station or pump.

11.      The Ordinance exempts from its provisions anyone soliciting for charitable purposes. Any person violating the Ordinance is guilty of an infraction. Any person who violates the Ordinance more than two times within a six month period is guilty of a misdemeanor.

12.      The Ordinance is facially invalid, content-based, and abridges the First Amendment rights of persons who seek to panhandle or solicit for donations for their own needs within the unincorporated areas of the County of Sacramento.

13.      The Ordinance is facially invalid and content-based because it targets speech based on its content and message of requesting donations for oneself.

14.      The Ordinance is content-based and therefore facially invalid because it singles speech out for restrictions when the speaker's message is to ask for financial assistance for himself, but not if he is asking for something else such as for a signature on a petition.

15.     Individual Plaintiffs and members of SHOC represented by that organization presently solicit for donations and offer the newspaper "Homeward" in exchange for donations at places where such activity is specifically prohibited. Unless or until Defendant is enjoined from enforcing the Ordinance, Plaintiffs will be damaged and Plaintiffs' rights to freedom of speech and equal protection of the laws guaranteed by the First and Fourteenth Amendments to the United States Constitution are and will continue to be violated.

**Sacramento Homeless Organizing Committee**

16.     SHOC was founded in 1987 by advocates, service providers and formerly homeless and low-income individuals in response to an anti-camping ordinance. SHOC and its members seek to address problems of homelessness through advocacy, direct non-violent actions, education, and by bridging the gap between the homeless community and others in our society. SHOC maintains a general membership policy that welcomes all who are interested in participating in its activities.

17.     SHOC began to publish a street newspaper titled the Homeward Street Journal ("Homeward") in 1997. Homeward is a bi-monthly publication covering issues and stories about homelessness, poverty, and other important social issues and news. Many of Homeward's published submissions are authored by individuals who are homeless. Homeward has attracted the participation of many homeless people who became new members and leaders of the SHOC organization.

18.     SHOC began a "vendor" program for distribution of Homeward in 2002 and that program is still currently functioning today. Through the vendor program, vendors who are predominantly poor and homeless can receive up to 60 copies of Homeward per week for free, which a vendor may then distribute in return for solicited donations. Vendors may obtain more than 60 copies of Homeward for a nominal fee. Vendors then solicit donations in exchange for the newspaper. SHOC instructs vendors to obtain at least a $1 donation, as indicated on the front of the newspaper. SHOC vendors consist of mostly low-income or homeless individuals who rely upon the vendor program and the financial benefit it provides for basic necessities and/or survival.

4

19. SHOC and its members directly benefit from the distribution of <u>Homeward</u> because dissemination of the newspaper simultaneously confers a financial benefit on its vendors and spreads awareness of important social issues, including homelessness and poverty, contained within <u>Homeward</u>.

20. SHOC vendors frequently solicit for donations in exchange for copies of <u>Homeward</u> in the unincorporated areas of the County of Sacramento to which the Ordinance applies. Enactment and enforcement of the Ordinance frustrates SHOC's goals and will require SHOC to expend resources it otherwise would spend in other ways. The Ordinance frustrates SHOC's goals because it suppresses SHOC vendors' ability to solicit for donations, using <u>Homeward</u> to attract contributions in a number of locations throughout the County of Sacramento. The Ordinance will require SHOC to expend resources it otherwise would spend in other ways, because SHOC will now be required to warn and educate its vendors regarding application of the Ordinance, in order to prevent citation and subsequent punishment under the Ordinance.

21. SHOC's members are and/or will be harmed by enactment and enforcement of the Ordinance, because it suppresses their ability to solicit for contributions and to distribute <u>Homeward</u> in a number of locations throughout the County of Sacramento. SHOC members' interest in distributing <u>Homeward</u> and soliciting donations in locations now prohibited by the Ordinance is germane to SHOC's goals and purposes.

**William Murphy**

22. MURPHY is unemployed and poor, and has only been able to secure temporary employment for brief tenures over the course of the past year and a half. Other than food stamps, MURPHY's sole source of income between jobs comes from asking ("panhandling") for money throughout the County of Sacramento.

23. MURPHY resorts to panhandling when his savings from temporary jobs has run out. MURPHY does not maintain a definite panhandling pattern, but he generally stands on sidewalks and street corners for two to five hours at a time. MURPHY uses a sign to ask for work or help. MURPHY never verbally requests a donation. Instead, MURPHY holds a sign on the sidewalk. MURPHY does not wave at people or do anything else to attract attention. MURPHY

5

1  only approaches vehicles when he has been summoned by their occupants. MURPHY keeps the

2  messages on his signs limited to asking for work, sometimes for food as well. For example, one of

3  MURPHY's signs reads "HOMELESS WILL WORK HAVE BIKE WILL TRAVEL [phone

4  number] PLEASE HELP."

5        24.     When holding a sign asking for work or help, MURPHY almost always stands on a

6  sidewalk near a driveway or intersection. MURPHY finds that it is important to be near a driveway

7  or intersection so that as many people as possible can see him. Additionally, MURPHY believes

8  that it is important to be near a driveway or intersection where people passing through can safely

9  stop and wave him over without obstructing traffic. When MURPHY panhandles, he is

10  conscientious not to block the entrance to any business or to hinder any foot traffic.

11        25.     When MURPHY panhandles at or near driveways, he always stands on the exit side

12  of the sidewalk to best avoid any traffic disruption. MURPHY recognizes that cars are typically

13  proceeding at a controlled speed while pulling out, which is a safe point for them to stop to give

14  money, as long as traffic is funneled into two lanes. MURPHY has found that people generally do

15  not stop to make donations as they are pulling into a driveway from the street, and MURPHY

16  would not want them to because it could cause street traffic to build up behind them.

17        26.     MURPHY has frequented different locations throughout the County of Sacramento

18  holding his signs, including in its unincorporated areas. For example, in the past year, MURPHY

19  has panhandled a few dozen instances on the public sidewalks outside both the Starbucks and The

20  Home Depot near the intersection of Madison and Manzanita Avenues in Carmichael, an

21  unincorporated area in the County of Sacramento.

22        27.     On March 10, 2014, MURPHY was cited by the City of Citrus Heights police for

23  soliciting on the sidewalk on Auburn Boulevard within the City of Citrus Heights. MURPHY was

24  holding a sign requesting work or help near the driveway of a shopping center on that occasion, in

25  the same fashion as described above. After that experience, the fear of criminal charges and arrest

26  have driven MURPHY out of the City of Citrus Heights completely, and denied him his right to

27  engage in peaceful panhandling within the City of Citrus Heights.

28

28.     If the Ordinance limiting solicitation in the unincorporated areas of the County of Sacramento is enforced, the public spaces at which MURPHY will be able to panhandle will be restricted in the same way as in the City of Citrus Heights. MURPHY will be unable to continue the practices he has described because he will fear citation or arrest. This will not only limit MURPHY's ability to hold signs, but it will threaten his ability to sustain himself with food and basic necessities. MURPHY fears that he will be driven out of the County of Sacramento due to enforcement of the Ordinance.

### Pamela Poole

29.     POOLE is a homeless person living in the County of Sacramento, and has been homeless since 2010.

30.     POOLE is a SHOC vendor who solicits donations as she distributes the <u>Homeward</u>. POOLE has been a SHOC vendor for the last seven years, since 2007. Vending for SHOC is POOLE's sole source of income.

31.     POOLE works approximately six to eight hours a day soliciting funds and distributing <u>Homeward</u>, at least five days a week. POOLE works during the hours she has found to be most successful in soliciting and distributing <u>Homeward</u>, including during the early morning hours, lunchtime, and generally from the hours of five to eight p.m.

32.     POOLE solicits and distributes <u>Homeward</u> at various locations within the County of Sacramento, including its unincorporated areas. For example, POOLE solicits and distributes <u>Homeward</u> at locations on or near the west side of Bradshaw Road which is prohibited under the challenged Ordinance.

33.     POOLE has found that distributing <u>Homeward</u> near the entrances and parking lots of stores to be the most effective, because of the increased exposure to the public. For example, POOLE often solicits and distributes <u>Homeward</u> near the entrances or parking lots of 99 Cent stores, Wal-Mart stores, and liquor stores.

34.     The Ordinance will limit POOLE's ability to solicit and distribute <u>Homeward</u> in the locations that she frequently utilizes. If POOLE is prevented from soliciting and distributing

1  Homeward in the locations described above due to enforcement of the Ordinance, she will lose her

2  sole source of income.

3         35.      Beyond working as a SHOC vendor, POOLE presently has no other prospects for

4  employment.

5  **FIRST CLAIM**

6  **Freedom of Speech**

7  **(First & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

8         36.      Plaintiffs reallege and incorporate the allegations of each and every preceding

9  paragraph of this Complaint, to the extent relevant, as if fully set forth herein.

10         37.      By enforcing its challenged Ordinance, Defendant, under color of state law, has

11  caused and will cause Plaintiffs and others who want to solicit for their own survival needs in the

12  County to be subjected to the deprivation of their constitutional rights, in violation of 42 U.S.C. §

13  1983.

14         38.      The Ordinance denies Plaintiffs' rights to freedom of speech guaranteed by the First

15  Amendment to the United States Constitution, on its face and as applied.

16         39.      As a direct and proximate result of Defendant's actions, Plaintiffs suffered and will

17  continue to suffer injuries entitling them to receive compensatory damages and injunctive relief.

18         WHEREFORE, Plaintiffs pray for relief as hereunder appears.

19  **SECOND CLAIM**

20  **Equal Protection**

21  **(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

22         40.      Plaintiffs reallege and incorporate the allegations of each and every preceding

23  paragraph of this Complaint, to the extent relevant, as if fully set forth herein.

24         41.      By enforcing its challenged Ordinance, Defendant, under color of state law, has

25  caused and will cause Plaintiffs and others who wish to solicit for their own needs in the County to

26  be subjected to the deprivation of their constitutional rights, in violation of 42 U.S.C. § 1983.

27         42.      The Ordinance denies Plaintiffs' rights to equal protection under the law guaranteed

28  by the Fourteenth Amendment to the United States Constitution.

8

43.    As a direct and proximate result of Defendant's actions, Plaintiffs suffered and will continue to suffer injuries entitling them to receive compensatory damages and injunctive relief.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

## THIRD CLAIM

### Declaratory Judgment

### (28 U.S.C. § 2201)

44.    Plaintiff realleges and incorporate the allegations of each and every preceding paragraph of this Complaint, to the extent relevant, as if fully set forth herein.

45.    There exists an actual, substantial controversy between the parties regarding the constitutionality of the Ordinance. Plaintiffs are entitled to a declaration of their rights pursuant to the First and Fourteenth Amendments to the U.S. Constitution, in light of the enactment of the Ordinance.

WHEREFORE, Plaintiffs pray for relief as hereunder appears.

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Sacramento Homeless Organizing Committee v. County of Sacramento*; United States District Court, Eastern District of California, Case No. _____

1

## **PRAYER**

2     WHEREFORE, Plaintiffs seek relief from this Court as follows:

3     1.    For preliminary and permanent injunctive relief;

4     2.    For declaratory relief;

5     3.    For compensatory, general, and special damages in an amount according to proof;

6     4.    For attorneys' fees as provided by law, pursuant to 42 U.S.C. § 1988, and any other

7    statute as may be applicable;

8     5.    For costs of suit; and

9     6.    For such other and further relief as the Court may deem just and proper.

10    DATED: July 17, 2014                    Respectfully Submitted,

11

12

13                                           By: _____
                                                 Mark E. Merin (SBN 043849)
14                                               Paul H. Masuhara (SBN 289805)
                                                 **LAW OFFICE OF MARK E. MERIN**
15                                               1010 F Street, Suite 300
                                                 Sacramento, California 95814
16                                               Telephone:      (916) 443-6911
                                                 Facsimile:      (916) 447-8336
17
                                                 Alan L. Schlosser (SBN 049957)
18                                               **AMERICAN CIVIL LIBERTIES UNION**
                                                 **FOUNDATION OF NORTHERN CALIFORNIA**
19                                               39 Drumm Street
                                                 San Francisco, California 94111
20                                               Telephone:      (415) 621-2493
                                                 Facsimile:      (415) 255-1478
21
                                                 Attorneys for Plaintiffs
22

23

24

25

26

27

28

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Sacramento Homeless Organizing Committee v. County of Sacramento*; United States District Court, Eastern District of California, Case No. _____

1

## DEMAND FOR A JURY TRIAL

2       A JURY TRIAL IS DEMANDED on behalf of Plaintiffs SACRAMENTO HOMELESS

3  ORGANIZING COMMITTEE, WILLIAM MURPHY, and PAMELA POOLE.

4  DATED: July 17, 2014                        Respectfully Submitted,

5

6

7                                             By: _____
                                                  Mark E. Merin (SBN 043849)
8                                                 Paul H. Masuhara (SBN 289805)
                                                  **LAW OFFICE OF MARK E. MERIN**
9                                                 1010 F Street, Suite 300
                                                  Sacramento, California 95814
10                                                Telephone:      (916) 443-6911
                                                  Facsimile:      (916) 447-8336
11
                                                  Alan L. Schlosser (SBN 049957)
12                                                **AMERICAN CIVIL LIBERTIES UNION**
                                                   **FOUNDATION OF NORTHERN CALIFORNIA**
13                                                39 Drumm Street
                                                  San Francisco, California 94111
14                                                Telephone:      (415) 621-2493
                                                  Facsimile:      (415) 255-1478
15
                                                  Attorneys for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Sacramento Homeless Organizing Committee v. County of Sacramento*; United States District Court, Eastern District of California, Case No. _____